IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| REGINA GOSNELL, ) | Civil Action No. 4:09-03142-RMG -TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This is an action brought pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I. PROCEDURAL HISTORY

Plaintiff, Regina Gosnell, protectively filed applications for DIB and SSI on September 11, 2006, with an alleged onset of disability of November 1, 2005. (Tr. 126, 151; see also Tr. 131). Plaintiff requested a hearing before an administrative law judge (ALJ) after her claims were denied initially and on reconsideration. (Tr. 116).

1

After plaintiff's February 11, 2009 hearing (see Tr. 61-90), the ALJ issued a decision dated April 8, 2009, finding plaintiff not disabled because she retained the residual functional capacity to perform a range of light work which existed in significant numbers in the national economy (Tr. 49). After the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1), the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. §§ 404.981, 416.1481.[1] Plaintiff filed the instant action on December 4, 2009.

## II. FACTUAL BACKGROUND

At the time of her hearing in front of the ALJ, plaintiff was forty-six years of age. (Tr. 65). The ALJ found that she has a limited education and past relevant work as a cook and food preparer. (Tr. 58). Plaintiff initially alleged disability due to hepatitis C, stomach ulcers, acid reflux and a hiatal hernia. (See Tr. 156).

## III. DISABILITY ANALYSIS

In her brief before the Court, plaintiff argues that the Commissioner's findings are in error because the ALJ failed to:

1. elicit a reasonable explanation for the apparent unresolved conflict between the testimony of the vocational expert (VE) and information contained in the Dictionary of Occupational Titles[2] ("DOT");

2. include plaintiff's nonexertional impairments in her hypothetical to the VE;

---

[1] All of this Court's references to the Code of Federal Regulations (C.F.R.) are to the 2009 edition.

[2] Emp't & Training Admin., U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. rev. 1991).

3. properly evaluate the opinions of plaintiff's physicians.

The Commissioner contends otherwise and urges that substantial evidence supports the determination that plaintiff was not disabled. In her decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since November 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hepatitis C, back pain/sciatica, arthritis, depression with anxiety, bilateral knee pain, and bilateral carpal tunnel syndrome status post release surgery in 2005 (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform reduced light work as defined in 20 CFR 404.1567(b) and 416.967(b). I specifically find that she can lift or carry 20 pounds occasionally and 10 pounds frequently, and she can stand or walk for four hours, total, of an eight hour work day, and sit for four hours of an eight hour work day, with normal breaks. I also find that she has limited use of the left dominant arm for any overhead reaching, and she can perform occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and she can occasionally perform fine manipulation bilaterally. I further find that the claimant needs to avoid workplace hazards such as moving machinery and heights, and she needs to avoid exposure to sharp objects or instruments which could puncture the skin. In addition, I find that the claimant is limited to following simple instructions and performing simple, routine tasks, and she cannot perform work at a production rate or pace.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 10, 1962 and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable jobs skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 51-59).

Under the Social Security Act (the Act), 42 U.S.C. § 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is

4

supported by substantial evidence. 42 U.S.C. § 405(g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R. §§ 404.1520, 416.920. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. part 404, subpart P, appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent him from any substantial gainful employment. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. § 423(d)(5), the plaintiff has the burden of proving disability, which is defined by §§ 423(d)(1)(A) and 1382c(a)(3)(A) as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

## IV. ARGUMENTS

A. VE Testimony

Plaintiff argues that the ALJ committed reversible error when she failed to ask the VE whether his testimony was consistent with the DOT. At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner relies primarily on the DOT for information about the requirements of work in the national economy, but may also use VEs at step five "to resolve complex vocational issues." Social Security Ruling (SSR) 00-4p, 65 Fed. Reg. 75,759-01, 75,760 (Dec. 4, 2000). But the Commissioner has determined that, in order to rely on a VE's testimony, the ALJ must first:

- Ask the VE or [vocational specialist] if the evidence he or she has provided conflicts with information provided in the DOT; and

- If the VE's or [vocational specialist's] evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Id.

At the hearing, the ALJ failed to make the specified inquiries. This lapse is significant because a number of conflicts appear between the ALJ's ultimate finding of residual functional capacity (RFC), as included in her hypothetical to the VE, and the DOT's descriptions of the jobs relied upon by the ALJ in finding that plaintiff is not disabled. The job of "inspector," DOT #741.687-010, is rated as "Light Work," defined by the DOT to require (i) "significant" walking or standing; (ii) mostly sitting but with pushing and/or pulling of arm or leg controls; and/or (iii) "working at a production rate pace entailing the constant pushing and/or pulling of materials." Id., appx. C. Although the DOT does not define the term "significant," the ALJ found that plaintiff could

## IV. ARGUMENTS

A. VE Testimony

Plaintiff argues that the ALJ committed reversible error when she failed to ask the VE whether his testimony was consistent with the DOT. At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner relies primarily on the DOT for information about the requirements of work in the national economy, but may also use VEs at step five "to resolve complex vocational issues." Social Security Ruling (SSR) 00-4p, 65 Fed. Reg. 75,759-01, 75,760 (Dec. 4, 2000). But the Commissioner has determined that, in order to rely on a VE's testimony, the ALJ must first:

- Ask the VE or [vocational specialist] if the evidence he or she has provided conflicts with information provided in the DOT; and

- If the VE's or [vocational specialist's] evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Id.

At the hearing, the ALJ failed to make the specified inquiries. This lapse is significant because a number of conflicts appear between the ALJ's ultimate finding of residual functional capacity (RFC), as included in her hypothetical to the VE, and the DOT's descriptions of the jobs relied upon by the ALJ in finding that plaintiff is not disabled. The job of "inspector," DOT #741.687-010, is rated as "Light Work," defined by the DOT to require (i) "significant" walking or standing; (ii) mostly sitting but with pushing and/or pulling of arm or leg controls; and/or (iii) "working at a production rate pace entailing the constant pushing and/or pulling of materials." Id., appx. C. Although the DOT does not define the term "significant," the ALJ found that plaintiff could

walk or stand only four hours in an eight-hour workday; could only sit for four hours of an eight-hour workday; and could not work at a production pace.

The position of "hand packager," identified by the VE as DOT #753.687-038, is also a "light" job, and is additionally defined as working on a conveyor line; the ALJ's RFC restricted plaintiff from moving machinery. This case should be remanded so that the ALJ may "elicit a reasonable explanation for the conflict" so that she can rely on the VE testimony "to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 65 Fed. Reg. at 75,760. Therefore, the ALJ must resolve this conflict before relying on the VE to support a determination or decision that the individual is or is not disabled. The ALJ should explain in the determination or decision how she resolved the conflict. The ALJ must explain the resolution of the conflict irrespective of how the conflict was identified.(SSR 00-4p). If the ALJ resolves the conflict by finding that plaintiff cannot perform one or more of the jobs listed, she should then decide if the remaining job or jobs constitute a significant number of jobs or if there has been a significant erosion of the plaintiff's occupational base. Contrary to defendant's suggestion, it is not the role of this Court to assume that such an explanation exists. Cf. Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

Plaintiff further argues that the ALJ erred by failing to include in her hypothetical to the VE the ALJ's findings that plaintiff experienced moderate difficulties with concentration, persistence or pace and moderate difficulties in social functioning. (See Tr. 56). For a VE's opinion to be "'relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.'"

Hines v. Barnhart, 453 F.3d 559, 566 (4th Cir. 2006) (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)) (internal citation omitted); see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothesis fails to conform to the facts. See Swaim v. Califano, 599 F.2d 1309, 1312 (4th Cir. 1979). Yet, the hypothetical posed to the VE need only reflect those impairments supported by the record. See Simila v. Astrue, 573 F.3d 503, 520 (7th Cir. 2009); Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005); Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000).

As the ALJ explained, however, plaintiff's "moderate" limitations are not an RFC assessment, but rather, are severity ratings utilized at the second and third steps of the sequential evaluation process. See 20 C.F.R. § 404.1520a(c), (d). Only once the claimant is found to have a "severe" mental impairment, does the factfinder proceed to determine the mental RFC. Id. § 404.1520a(d)(3). The regulations provide that "RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments," and its assessment "requir[es] consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe." Id. pt. 404, subpt. P, app. 1, 12.00A.

In finding plaintiff's mental impairments to result in "moderate" limitations and thus be deemed "severe,"[3] the ALJ considered the opinions[4] of the state agency experts who found plaintiff

---

[3] If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see § 404.1521).

8

moderately limited in such a manner. (See Tr. 380, 461). These experts proceeded to opine that mental RFC would allow her to understand, remember, follow and carry out short and simple instructions; and to perform simple, routine work activities. (Tr. 386; see also Tr. 467). Dr. Thomas Montagne, one of plaintiff's treating physicians, agreed that she could understand, remember and carry out simple instructions, and could make simple work-related decisions. (Tr. 469).

The ALJ thus adopted these opinions in finding that plaintiff's RFC allowed her to follow simple instructions and perform simple, routine tasks. The ALJ added the further restriction that plaintiff could not perform work "at a production rate or pace" (Tr. 57); plaintiff has not objected to the ALJ's mental RFC finding. These limitations were conveyed in each of the ALJ's hypotheticals to the VE (see Tr. 81, 82, 85), and hence, plaintiff's objection here is without merit.

B. Physicians' Opinions

Plaintiff next complains that the ALJ erred when assessing the opinions of Dr. James Hayes of the Taylors Free Medical Clinic, and Dr. Montagne. Although the regulations require that all medical opinions in a case be considered, 20 C.F.R. § 404.1527(b), treating physician opinions are accorded special status, see id. § 404.1527(d)(2). "Courts typically 'accord greater weight to the

---

20 C.F.R. § 404.1520a(d)(1).

[4] The initial disability determination is made by a state agency acting under the authority and supervision of the Commissioner. 42 U.S.C. § 421; 20 C.F.R. § 404.1503. The state agency medical and psychological consultants "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 61 Fed. Reg. 34,466-01, 34,467 (July 2, 1996). The regulations require that ALJs consider the findings of such experts as "opinion evidence." 20 C.F.R. § 404.1527(f)(2)(i).

testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.'" Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson, 434 F.3d at 654) (internal citation omitted). The rule, however, does not mandate that her opinion be given controlling weight. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). "It is error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96-2p, 61 Fed. Reg. 34,490-01, 34,491 (July 2, 1996); see also 20 C.F.R. § 404.1527. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); see also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

Plaintiff argues that "[a]lthough the ALJ indicated the weight she gave the statements of Dr. Montagne and Dr. Hayes, she did not engage in the analysis required by 20 C.F.R. §404.1527(d)(2), nor did she cite specific reasons for the weight given, supported by the evidence in the case record." (Plaintiff's brief, p. 30). Plaintiff asserts the ALJ made the statement that the opinions of Dr. Hayes and Dr. Montagne are inconsistent with the objective medical evidence but did not indicate which specific records were inconsistent with said medical source statements. Plaintiff contends the ALJ made a blanket statement that does not contain the specificity required. Further, plaintiff argues that the ALJ failed to give appropriate weight to the treating physicians which constitutes reversible error. Plaintiff asserts the ALJ rejected the opinions of the two treating physicians, Dr. Montagne and Dr.

10

Hayes. Plaintiff contends that Dr. Hayes is a "treating physician," but as the ALJ pointed out, Dr. Hayes tendered his opinion after seeing plaintiff only once. (Tr. 58). There is no indication in the record that Dr. Hayes ever saw plaintiff again. Accordingly, Dr. Hayes is not due the deference afforded a treating physician. Cf. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983) ("[T]he opinion of a claimant's treating physician ... is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.").[5]

Plaintiff argues that the ALJ "discounted Dr. Montagne's opinion by stating that his treatment notes suggested a 'much higher level of functioning' than his statement that she cannot engage in activity for a 40 hour week, although she [the ALJ] fails to indicate which treatment notes she is referring." (Plaintiff's brief, p. 33). Therefore, plaintiff asserts the ALJ "mischaracterizes the medical evidence and uses flawed reasoning in reaching her conclusions that the opinions of Dr. Hayes and Dr. Montagne should not be given great weight." (Id.). In support of her argument that the ALJ mischaracterizes Dr. Hayes' opinion, plaintiff points to the ALJ's statement that Dr. Hayes "describes an individual who requires around-the-clock care in a nursing home setting." (Tr. 58). However, the ALJ did not simply rely on that analysis of Dr. Haye's opinion but explained that the doctor's "own treatment notes are in stark contrast to his rather dire assessment" and also inconsistent with the medical evidence as a whole. (Id.). As to Dr. Montagne's statement in September 2006 that

---

[5] Plaintiff argues that the ALJ erred in preferring the opinion of a *non-examining* state agency expert, but "[t]he duty to resolve conflicts in the evidence rests with the ALJ . . . ." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) (citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993)). It is not for a reviewing court to substitute its judgment for that of the ALJ if his decision is supported by substantial evidence. See Johnson, 434 F.3d at 653 (quoting Craig, 76 F.3d at 589).

claimant's hepatitis C was largely treatable, plaintiff contends the ALJ failed to mention the fact that the treatment Dr. Montagne was referring caused plaintiff such serious side affects that she became suicidal. Plaintiff further asserts the ALJ failed to indicate that he gave any consideration to the fact that plaintiff's hepatitis C is capable of causing the fatigue plaintiff states she experiences. Lastly, plaintiff argues that "although the ALJ indicated that she had accepted some of Dr. Montagne's limitations in Gosnell's RFC, she stated that she did not agree with his conclusion that the claimant 'cannot walk, sit, move around for 40 hours a week' or that she has difficulty with fine manipulation. However, the ALJ had previously indicated her own finding that Gosnell would be limited to only occasional fine manipulation bilaterally." (Plaintiff's brief, p. 34).

As discussed above, in response to a questionnaire, Dr. Montagne opined that plaintiff could understand, remember and carry out simple instructions, and could make simple work-related decisions, and that she could respond appropriately to supervision, co-workers and usual work situations. (Tr. 469). This questionnaire was completed by Dr. Montagne just two weeks prior to Dr. Haye's completing the same questionnaire wherein Dr. Hayes responded that plaintiff had a substantial lack of ability to understand, remember, and carry out simple instructions and lacked the ability to make simple work-related decisions. (Tr. 471). Dr. Montagne treated plaintiff from at least January 2005, and he saw her on nine additional visits before rendering his opinion. Dr. Hayes, as set out above, disagreed with Dr. Montagne on each of these points after seeing plaintiff just once. (See Tr. 471).

Dr. Hayes also stated that plaintiff had significant manipulative limitations in both hands (id.), yet the only reference in his notes to plaintiff's hands mentions "blisters" (Tr. 475). He makes conclusions in responding to the questionnaire about her mental status apparently based solely on

12

plaintiff's complaints of "anxiety/panic attacks." (Id.). Further, Dr. Hayes opined that plaintiff would have to elevate her legs above the waist for significantly more than an hour during the work day whereas Dr. Montagne opined that she would not have to elevate her legs. (Tr. 470). Dr. Hayes gives no reason for said opinion with relation to the elevation of her legs. See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (holding the ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided"); see also Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir. 2004) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements."); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). While Dr. Hayes professed to base his opinion on plaintiff's "physical exam & positive findings," his notes reveal little aside from plaintiff's subjective complaints. (Tr. 475). See Mastro, 270 F.3d at 178 (upholding ALJ's decision to accord little weight to an opinion based mainly on plaintiff's subjective complaints); see also Craig, 76 F.3d at 592 ("'[S]ubjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof.'") (citation omitted). Finally, Dr. Hayes's resulting treatment was minimal. Besides referring plaintiff for orthopaedic and hepatitis C care, there is no evidence of any further treatment other than renewing some of plaintiff's prescriptions. (Tr. 475). Therefore, there is substantial evidence to support the ALJ's decision with regard to the weight he placed on the above opinions of Dr. Montagne and Dr. Hayes as set out above.

In further support of the ALJ's decision, the ALJ noted the report from consultative examining physician Dr. Larry R. Korn in which he opined that "[p]hysical limitations she describes

from the fatigue are hard for me to quantify and comment on. With the left elbow, there are some objective findings that would indicate that she is not going to be able to perform vigorous gross manipulations with that arm as well as she would like to; comparing to the right, I will consider that a mild deficit. Finally, I think in light of her hepatitis C and her weight loss, it would be impractical to expect her to be able to perform vigorous general labor activities at this time." (Tr. 354). Therefore, the ALJ noted that the only limitation placed on plaintiff by Dr. Korn was no "vigorous general labor activities at this time." (Tr. 354). The ALJ also discussed the findings of Dr. Karl Bodtorf who conducted a consultative psychological evaluation resulting in a diagnoses of mood disorder and anxiety disorder but opined she only had "mild-to-moderate difficulties with independent functioning, mild-to-moderate limitation with respect to memory/concentration, and moderate limitation with respect to social functioning." (Tr. 368). The ALJ also noted that in January 2008, Dr. Byrd and his staff felt there was no reason why plaintiff could not sit through a week of jury duty. (Tr. 57).

Additionally, the ALJ, while not giving controlling weight to the opinions of Dr. Montagne, did incorporate some of Dr. Montagne's limitations into her RFC finding (Tr. 58) but disagreed with the doctor's opinion that plaintiff could not "walk, sit, move around for 40 hours/week" (tr. 469)[6] reasoning Dr. Montagne's "own treatment notes suggest a much higher level of functioning" (Tr. 58). The plaintiff's argument that the ALJ did not specify which records support his assessment is incorrect. The ALJ specifically referred to several of Dr. Montagne's records. (See Tr. 52-53, 55).

---

[6] The ALJ also stated that she disagreed with Dr. Montagne that plaintiff "has difficulty with fine manipulation." (Tr. 58). But the doctor had stated that plaintiff could not "perform activities that require anything more than occasional fine manipulation" (Tr. 469), and the ALJ's RFC finding limited plaintiff to only occasional fine manipulation (Tr. 56; see also Tr. 82 (hypothetical limitation to "only occasional bilateral find [sic] manipulation")).

The ALJ noted that from November 3, 2005, to August 25, 2006, the doctor treated plaintiff for abdominal pain and anxiety stemming from familial issues. In January and March, he observed that plaintiff was "doing well." (Tr. 336). The ALJ noted that on September 5, 2006, Dr. Montagne discussed plaintiff's hepatitis C diagnosis, noting that she had a "low viral count." (Tr. 52; see also Tr. 318). Further, the ALJ noted that because of adverse side effects, including suicidal ideation, the treatment for hepatitis C was discontinued the following month. (Tr. 334, 401; see also Tr. 53). The ALJ mentions plaintiff's November 22, 2006, visit with Dr. Montagne (Tr. 53); the doctor noted no complaints and gave plaintiff Protonix in response to her request for Nexium (Tr. 400). The ALJ also referred to a January 23, 2007, visit in which it was noted that plaintiff had a normal musculoskeletal inspection and ex-rays shoed only minimal lumbar disc disease.(Tr. 53; see also Tr. 399). Although plaintiff had run out of antidepressant since losing her health insurance in November, she denied any suicidal thoughts or ideation. (Tr. 399; see also Tr. 53). In the decision, the ALJ next discussed Dr. Montagne's assessment of plaintiff's functioning.

Plaintiff focuses on the ALJ's observation that Dr. Montagne, after referring to plaintiff's "low viral load," predicted that "there is a fairly good probability we can cure [her hepatitis C] with treatment." (Tr. 52; see also Tr. 318). However, plaintiff's argument that the ALJ failed to mention the fact that the treatment Dr. Montagne was referring to caused her such serious side affects that she became suicidal fails. As set out above, contrary to plaintiff's argument, the ALJ noted that "the claimant reported feeling suicidal during interferon treatments for hepatitis." (Tr. 53).

Plaintiff faults the ALJ for failing to mention plaintiff's difficulty with fatigue, which she claims is "an unfortunate but common effect of infection with hepatitis C." (Pl.'s Br. 34). Yet the Court's review of Dr. Montagne's records preceding his opinion reveals no mention of fatigue.

15

Hence, Dr. Montagne's records fail to support his finding that plaintiff was unable to move around for forty hours per week, and plaintiff has not established reversible error in the ALJ's decision to discount Dr. Montagne's opinion with regard to this issue.[7]

## V.  CONCLUSION

Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under § 205(g), sentence four, and § 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), it is,

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above to determine if plaintiff is entitled to benefits from the alleged onset date of November 1, 2005.

Respectfully submitted,

December 16, 2010
Florence, South Carolina

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

---

[7] In her Reply Brief, plaintiff contends that she challenged the ALJ's credibility finding "implicit[ly]" (Pl.'s Reply Br. 1), but because such argument is not *explicit*, nor is it accompanied by argument, the Court is not charged with addressing it. See Ridpath v. Bd. of Governors Marshall Univ. 447 F.3d 292, 305 (4th Cir. 2006) (holding that where a party raises an issue "only in a reply brief, a district court is entitled to refuse to consider it at that stage of the proceedings"). However, because this case is to be remanded, the ALJ is instructed to ensure that her credibility finding is in compliance with both steps one and two of Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).